**USX CORPORATION, et al.,**
**Plaintiffs/Counter**
**Defendants,**

v.

**TIECO, INC., et al. Defendants/Counter**
**Plaintiffs.**

**No. CIV.A. CV95HS3237S.**

United States District Court,
N.D. Alabama,
Southern Division.

Sept. 1, 2004.

C. Gregory Burgess, Fees & Burgess PC, Huntsville, AL, Gary M. London, Victor L.

Hayslip, Burr & Forman LLP, Jere F. White, Jr., Sara Anne Ford, Sarah Warburton, Warren B. Lightfoot, William Owens Hutchinson, Lightfoot Franklin & White LLC, John B. Tally, Jr., Stephen A. Rowe, Todd M. Higey, William L. Waudby, Adams & Reese/Lange Simpson LLP, Peter A. Grammas, Lowe Grammas Hitson & Dana LLP, Robert D. Hunter, Altec Inc., Birmingham, AL, J.L. Chestnut, Jr., Chestnut Sanders Sanders Pettaway & Campbell LLC, Selma, AL, John J. Dalton, June Ann Sauntry, William N Withrow, Jr., Troutman Sanders LLP, Atlanta, GA, for Plaintiffs/Counter Defendants.

Albert C. Bowen, Jr., Clyde E. Riley, Beddow Erben & Bowen PA, George W. Andrews, III, J. Mark White, Linda G. Flippo, Stephen R. Arnold, White Arnold Andrews & Dowd PC, Ralph D. Cook, Hare Wynn Newell & Newton, Birmingham, AL, for Defendants/Counter Plaintiffs.

## MEMORANDUM OPINION AND ORDER

HOPKINS, District Judge.

The Plaintiff/Counter Defendant, United States Steel Corporation ("USS")[1] and the Defendants/Counter Plaintiffs, TIECO, Inc., ATOZ Management, Inc., and Fletcher Yeilding (collectively "TIECO"), are in their ninth (9th) year of litigation arising from the discovery by USS that the USS's Heatherwood golf course and its tractor shop (the "USS local facilities") were, through the actions of some local USS employees with TIECO's assistance, performing an end around USS's corporate procurement system. The billing scheme is described in the 11th Circuit Court of Appeals opinion in this case, *United States Steel v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir.2001)[2], and to the extent that the following description differs from that described by the Court of Appeals, the Court of Appeals' description controls.[3]

---

1. At the time the Complaint was filed in this action, the named Plaintiff was USX Corporation, and the caption of this case and earlier pleadings and briefs therefore refer to Plaintiff as "USX." The current party before the court is United States Steel Corporation, a Delaware corporation and successor by merger to USX Corporation and United States Steel LLC.

2. A copy of the 11th Circuit's decision is attached as Exhibit A to this Opinion and Order.

3. The court, like the Court of Appeals, portrays the facts in the light most favorable to TIECO.

TIECO was a vendor of parts and equipment to the local USS facilities. The local USS facilities wanted vehicles, particularly Cushman vehicles, for its operations, but budget constraints imposed by USS's corporate purchasing department in Pittsburgh, Pennsylvania did not permit the local facilities to issue purchase order(s) in the amount(s) required to buy the desired vehicle(s). TIECO and the local facilities devised a scheme where the local facilities would issue purchase orders, which did not exceed the local facilities' purchasing authority, for parts and other goods from TIECO. TIECO would not deliver the purchase order item(s) to the local facilities. TIECO would, however, bill USS for the items. TIECO would debit its inventory as though the goods had been delivered, and would credit a separate, and extraordinary USS ledger account,[4] for the amount of goods "sold" and the amount(s) of payments received from USS. When the USS local facilities' credit balance reached a point where a desired vehicle could be purchased, the vehicle would be delivered, TIECO's inventory and the extraordinary USS ledger would be credited and debited respectively, and the cycle would begin anew.

USS learned of these events through a disgruntled former TIECO employee's assertions of various wrongdoings by TIECO to his attorney. The attorney's firm was also one of USS's outside counsel. From these revelations came an investigation by USS and the Alabama Attorney General's office, a state court indictment of TIECO that was eventually dismissed (before trial), this lawsuit, and a related lawsuit sought to be consolidated with this action, Case Number CV–01–RRA–1372–S, ("TIECO II"). While not entirely free of debate, the USS investigation was initially fueled, at least in part, by a suspicion or belief that TIECO was not delivering any goods to USS. TIECO's position, then and now, was that it delivered goods equivalent in value to the amounts of the purchase orders, and that USS, through its agents, acquiesced in the procurement and billing scheme.

## I. *Nature of the Case and Procedural Posture*

Much of this section, as well as III and IV., is drawn from the October 24, 2003 Joint Status Report filed by the parties. Doc. 399. USS filed this action on December 15, 1995 (Doc. 1), asserting claims pursuant to 28 U.S.C. §§ 1331, 1367 and 18 U.S.C. § 1964 against TIECO; ATOZ Management, Inc. ("ATOZ"), a TIECO affiliate that maintains TIECO's accounting records; Fletcher Yeilding ("Yeilding"), TIECO's President; and six TIECO employees, who were later dismissed. (Doc. ## 95, 151). On June 4, 1996, Defendants TIECO, ATOZ and Yeilding filed an Answer and Counterclaim (Doc. 38), and subsequently filed an Amended Counterclaim. TIECO asserted causes of action for civil conspiracy, violation of 42 U.S.C. § 1983, conspiracy to violate § 1985, malicious prosecution, abuse of process, interference with business relations, interference with employee relations, misrepresentation, defamation, and selective prosecution. (Doc. 81).

During trial, the court dismissed all of USS's claims as a sanction for discovery abuse (in particular the failure to produce requested documents dealing with Cushman vehicles and the local facilities' "tractor shop"). The dismissal of USS's claims took place while the jury was deliberating, and on November 9, 1999, in accordance with the jury verdict, the court entered its Final Judgment and Order (Doc. 309), awarding TIECO $7,175,000 on the counterclaims. USS filed a timely Notice of Appeal as to both the sanction of dismissal of the Complaint and as to the jury verdict on TIECO's counterclaims. (Doc. 337; Eleventh Circuit Case No. 00–11309). TIECO did not file a cross appeal. The court subsequently awarded TIECO attorneys' fees and costs (Doc. 350); in response, USS filed a second appeal. (Doc. 352; Eleventh Circuit Case No. 00–12842).

On August 17, 2001, the Eleventh Circuit Court of Appeals issued its opinion in both appeals, sustaining the dismissal of USS's claims as a discovery sanction[5] and reversing

---

4. Extraordinary because it was created solely for the local facilities, or the tractor shop, and done so without the knowledge and consent of USS purchasing headquarters in Pittsburgh.

5. USS asserts that the Eleventh Circuit's affirmance of the dismissal of USS's claims as a sanction was pursuant to 11th Cir. R. 36–1 and has no precedential value. *U.S. v. Tieco*, 261 F.3d 1275, 1280. Resolution of this contention

the court's entry of judgment on TIECO's jury verdict on its counterclaims and remanding for entry of judgment for USS on TIECO's counterclaims. TIECO moved for rehearing en banc on September 7, 2001, which was denied on November 8, 2001. The Eleventh Circuit mandate, issued November 16, 2001, remanded only the question of whether TIECO was the prevailing party under Fed.R.Civ.P. 54(d) for purposes of recovering its costs and directed the court to determine whether TIECO was entitled to its costs pursuant to Fed.R.Civ.P. 54(d) and, if so, to reevaluate the amount of costs awarded consistent with 28 U.S.C. § 1920. 261 F.3d at 1294. On October 24, 2002, the court entered its Order on costs as directed by the Eleventh Circuit in Appeal No. 00–12842.

## II. Pending Motions

TIECO filed a Motion for New Trial on October 25, 2002, pursuant to Fed R. Civ. P. 60(b) ("the Rule 60(b)(3) Motion For New Trial", unless referring to a pleading, where the pleading's title is used instead), contending that documents not produced by USS prior to or during trial prevented TIECO from conducting full and fair discovery and fully and fairly presenting its counterclaims. TIECO makes similar claims regarding documents produced after trial. TIECO also has requested discovery in aid of the Rule 60(b)(3) motion. USS opposes the Rule 60 Motion and the request for discovery.[6]

Also pending before the court is TIECO's Motion to Consolidate this case with Case Number CV–01–RRA–1372–S, which has been referred to as "TIECO II".[7] USS opposes this motion but would consent to consolidation if the Rule 60(b)(3) Motion For New Trial were granted.

A Motions hearing was held on April 25, 2003 by Chief Judge Clemons, who originally tried the case and who entered the November 9, 1999 Memorandum Opinion Striking The Claims Of The Plaintiff, doc. 310. No rulings on the pending motions have been made. After the file was reassigned to this Judge, a status conference was held and on August 26, 2004, the court held a Motions hearing to hear the parties' argument on the pending motions.

## III. TIECO's Position On The Pending Motions

TIECO contends that it is entitled to a new trial under F.R.Civ.P. 60(b) asserting that as a result of discovery abuses by USS before, during and after trial, TIECO was denied the opportunity to conduct full and fair discovery in this case and to fully and completely present its counterclaims. TIECO contends that the actions of USS constituted a fraud upon the trial court and that the circumstances of this case are of such an extraordinary nature as to warrant a new trial. (See discussion and case authority in TIECO's Rule 60(b)(3) Motion for New Trial (Doc. 369); TIECO's Reply to USS's Response to TIECO's Supplemental Response and Clarification (Doc. 382)); TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 377).

TIECO contends that USS documentary evidence, and the resulting witness examination or cross examination that flowed from those documents, was not available to TIECO prior to trial. This documentary and oral evidence was not considered by the jury, the trial court[8], or the Eleventh Circuit in relation to the effect of the evidence on

---

is not necessary for resolution of the Rule 60(b)(3) Motion For New Trial, and the court expresses no opinion on it.

**6.** Certain filings made by each of the parties did not appear on the Court's Docket Sheet, but have now been received pursuant to an Order entered July 7, 2004. Doc. 407.

**7.** On April 25, 2001, while this case was on appeal to the Eleventh Circuit, TIECO filed an action in the Circuit Court of Jefferson County, Alabama, Bessemer Division, against USS, Rob-

ert E. Hilton, James B. Wager, and Kenneth Falls. That action asserts claims of misrepresentation, deceit, suppression, negligence, and perjury. USS subsequently removed that action to the United States District Court for the Northern District of Alabama, Southern Division, where it has been assigned Civil Action Number CV–01–RRA–1372–S.

**8.** TIECO means as it relates to its counterclaims, since the non-production of the USS documents cost USS its entire affirmative case.

TIECO's counterclaims. TIECO contends that documents produced by USS months after the trial of this case were relevant to TIECO's counterclaims and constitute newly discovered evidence. (See discussion and case authority in TIECO's Reply to Plaintiff's Response in Opposition to Defendant's Rule 60(b)(3) Motion For New Trial; TIECO's Supplemental Response and Clarification (Doc. 379); TIECO's Reply to USS's Response to TIECO's Supplemental Response and Clarification (Doc. 382)).

TIECO contends that statements former Attorney General Investigator Larry Miller provided to TIECO in August of 2002 regarding USS's failure to disclose exculpatory evidence to the Attorney General's Office for purposes of its criminal investigation constitute newly discovered evidence. TIECO contends that the newly discovered evidence warrants a new trial on TIECO's counterclaims. (See discussion and case authority in TIECO's Reply to Plaintiff's Response in Opposition to Defendant's Rule 60(b)(3) Motion For New Trial; TIECO's Supplemental Response and Clarification (Doc. 379); TIECO's Reply to USS's Response to TIECO's Supplemental Response and Clarification (Doc. 382)).

TIECO contends that its Rule 60(b)(3) Motion for New Trial was timely filed. TIECO stated, at the (on the record) status conference held August 17, 2004, that the 11th Circuit's mandate, issued November 16, 2001, was the "triggering" event for determining the timeliness of its motion. TIECO's Rule 60(b)(3) Motion For New Trial was filed on October 25, 2002. TIECO has also requested discovery in aid of its Rule 60(b)(3) motion. (See discussion and case authority in TIECO's Reply to Plaintiff's Response in Opposition to Defendant's Rule 60(b)(3) Motion For New Trial; TIECO's Supplemental Response and Clarification (Doc. 379); TIECO's Reply to USS's Response to TIECO's Supplemental Response and Clarification (Doc. 382); TIECO's Supplement to Rule 60 Motion (Doc. 388)).

TIECO contends that its Motion to Consolidate is only relevant to the issues pending in TIECO II before Magistrate Armstrong. TIECO contends that it filed the Motion to Consolidate TIECO II because all three of the individual defendants were both deposition and trial witnesses in the instant case and were integral participants in USS's production of documents and other evidence before, during, and after the trial of this case. TIECO contends that the only matter currently at issue in TIECO II is whether that case should be remanded because there has been no fraudulent joinder and no complete diversity of the parties in that action. TIECO contends that its request to consolidate the instant case with TIECO II was based on the fact that the trial court had heard the testimony of these witnesses regarding their involvement in the discovery process and, therefore, the trial court had been in the best position to determine whether Ken Falls was a proper defendant in TIECO II. (See discussion and case authority in TIECO's Motion to Consolidate; TIECO's Reply to USX's Response to TIECO's Motion to Consolidate, filed November 22, 2002.)

### IV. *USS's Position On The Pending Motions*

USS contends that TIECO's Rule 60(b)(3) Motion For New Trial is an impermissible collateral attack on the Eleventh Circuit's ruling in *United States Steel v. Tieco*, 261 F.3d 1275 (11th Cir.2001), and the Eleventh Circuit mandate and the law of the case rule render this Court without jurisdiction to alter or amend the mandate. (See discussion and case authority in USS's Response in Opposition to TIECO's Rule 60(b) Motion For New Trial, filed November 8, 2002; USS's Response to TIECO's Supplemental Response and Clarification (Doc. 380); USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)).

USS contends that the documents to which TIECO points in support of its Rule 60(b)(3) motion were before the Court and before the Eleventh Circuit, and thus do not constitute new evidence as required by Rule 60(b)(3). (See discussion and case authority in USS's Response in Opposition to TIECO's Rule 60(b)(3) Motion for New Trial, filed November 8, 2002; USS's Response to TIECO's Supplemental Response and Clarification (Doc. 380); USS's Reply to TIECO's Supple-

mental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)). Moreover, to the extent there was any discovery abuse, TIECO obtained the exact relief it requested on this issue when USS's Complaint was dismissed, a sanction affirmed by the Eleventh Circuit.

USS contends that TIECO's Motion for New Trial was not timely. (See discussion and case authority in USS's Response in Opposition to TIECO's Motion for New Trial, filed November 8, 2002 at p. 10–11).

USS contends that TIECO waived its right to raise the issues in its Rule 60(b)(3) motion by its failure to raise these issues before the Court during the trial. (See discussion and case authority in USS's Response in Opposition to TIECO's Motion for New Trial, filed November 8, 2002; USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)).

For purposes of this opinion, the court will treat TIECO's Motion as timely. Further, the court will treat TIECO's "after added grounds" (newly discovered evidence) as though they had been asserted in the original Rule 60(b) Motion For New Trial, including both Larry Miller affidavits.[9]

USS further contends that TIECO waived its right to raise the issues in its Rule 60(b)(3) motion by its failure to raise these issues before the Eleventh Circuit in its Petition for Rehearing En Banc. (See discussion and case authority in USS's Response to TIECO's Supplemental Response and Clarification (Doc. 380); USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)). This court, assuming *arguendo* that it and not the 11th Circuit is the appropriate body to say what was and wasn't raised before the 11th Circuit, declines to overrule TIECO's Rule 60(b)(3) Motion For New Trial on that basis. This argument is discussed in Section V., *infra.*

USS contends that TIECO has not offered any newly discovered evidence sufficient to support its Rule 60(b)(3) motion as required by Fed.R.Civ.P. 60(b)(2). (See discussion and case authority in USS's Response to TIECO's Supplemental Response and Clarification (Doc. 380); USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)).

USS contends that the evidence offered by TIECO in support of its Rule 60(b)(3) motion does not qualify as an exception to the law of the case rule. (See discussion and case authority in USS's Response in Opposition to TIECO's Motion for New Trial, filed November 8, 2002; USS's Response to TIECO's Supplemental Response and Clarification (Doc. 380); USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)).

USS contends that TIECO has not offered any newly discovered evidence sufficient to support its Rule 60(b)(3) motion under the grounds provided in Fed.R.Civ.P. 60(b)(6). (See discussion and case authority in USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)).

USS contends that the Affidavits of Larry Miller were not timely filed as required by Fed.R.Civ.P. 59(c). Further, even if the Court deems them timely filed, USS contends that none of Mr. Miller's testimony constitutes "new evidence" relevant to TIECO's current motions. USS contends that even if Mr. Miller's testimony were relevant, TIECO has not shown the diligence in obtaining it required by Fed.R.Civ.P. 60(b)(2). (See discussion and case authority in USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)). Again, for the reasons stated above, the court treats the (second) Miller

---

9. The reasons for doing so are discussed in Section V.

affidavit as timely filed and has considered both Miller Affidavits in its review of the Rule 60(b) Motion For New Trial.

USS contends that TIECO is not entitled to conduct discovery in aid of its Rule 60(b)(3) motion. (See discussion and case authority in USS's Reply to TIECO's Supplemental Response to Motion to Disqualify and Waudby Affidavit (Doc. 381); USS's Response to TIECO's Supplement to Motion for New Trial (Doc. 389)). In its most current form (Doc. 388, TIECO Supplement To Motion For New Trial), the heart of the newly discovered evidence claim relates to the relationship between the Alabama Attorney General's office and USS. TIECO says it has now come to light that former Attorney General (now 11th Circuit Judge) Pryor, may have been involved in fund raising involving USS. TIECO says [2003] proceedings before the United States Senate Judiciary Committee contained allegations that former Attorney General Pryor may have been involved, as a member of the Republican Attorneys General Association, in solicitations of companies being investigated by the Attorney General's office, and that this may also have been the case with companies (like USS) whose causes TIECO alleges were being championed by the Alabama Attorney General's office. TIECO says a USS PAC made campaign contributions to then Attorney General Sessions and Mr. Pryor for their campaigns (Pryor was Deputy Attorney General under Attorney General Sessions and succeeded him in that office), and afterwards, and that this activity encompassed the period of time involved in the case and the "bad acts" of USS and the Attorney General's office. TIECO seeks as part of its discovery an Order directing that all the documents relating to these activities be produced, along with documents relating to the Republican Attorneys General Association dealings with USS, and similar documents from the files of Senator Sessions and former Attorneys General Sessions and Pryor.

In light of the court's ruling on the Rule 60(b) Motion For New Trial, any TIECO discovery requests are moot. In the alternative, for the reasons stated *infra,* the court does not believe that any discovery TIECO could obtain could change in any meaningful or relevant way the core rulings of the 11th

Circuit Court of Appeals in this action or persuade the Court of Appeals to revisit those rulings. Put another way, it is for the Court of Appeals, not this court, to say that the issues regarding the Alabama Attorney General's office are to be revisited a third time.

USS contends that the instant case is not pending within the meaning of Rule 42(a), and the Eleventh Circuit mandate therefore precludes this case from being consolidated with another proceeding, *i.e., TIECO II.* (See discussion and case authority in USS's Response in Opposition to Defendants'/Counter Plaintiffs' Motion to Consolidate, filed November 15, 2002.) This argument is also moot.

## V. *Discussion: Timeliness and Merits of TIECO's Rule 60(b)(3) Motion For New Trial*

In its review of TIECO's Rule 60(b)(3) Motion For New Trial Motion, the court accepts, for purposes of discussion, what it understands to be TIECO's core contention: "neither the jury nor the 11th Circuit has ever had an opportunity to fully consider all the evidence supporting TIECO's claims".

This acceptance does not eliminate or render moot in any way the threshold question of this court's jurisdiction, or power to hear TIECO's Rule 60(b)(3) Motion For New Trial Motion. The court is a court of limited jurisdiction. Because the mandate of the 11th Circuit only remanded the issue of prevailing party costs, the court has substantial doubts about its own jurisdiction to hear, except as to issues directly related to prevailing party costs, TIECO's Rule 60(b)(3) Motion For New Trial, and therefore its power to grant any other relief under Rule 60 to TIECO.

The court will nonetheless discuss the merits of TIECO's Rule 60(b)(3) Motion For New Trial. The court does so for a couple of reasons.

First and primarily, if there is further appellate review of this action, the court wishes the review to be on the merits of the TIECO's Rule 60(b)(3) Motion For New Trial allegations, and not whether or not some or all of the allegations were properly made or

timely filed. If the Court of Appeals subsequently rules there were no procedural or time bars to any of the relief sought in the Motion, the Court of Appeals will hopefully not have to remand the action to this court to rule on the merits of the Motion.

In TIECO's defense, its counsel pointed out at oral argument that the District Court never entered an Order following the receipt of the mandate from the Court of Appeals, and under F.R.Civ.P. 58, an additional one hundred fifty (150) days is tacked onto the one (1) year maximum permitted under Rule 60(b)(3). Using that time measure, the court believes all of TIECO's filings save the second Larry Miller affidavit were filed within that time period.

By the same token, court can see the argument these are maximum time limits and a Rule 60 movant should have to explain why the motion was filed at or near the end of the maximum allowable time period. TIECO's presentation on this point is not particularly strong. Were the motion one under Rule 15, a pretrial rule designed to ensure that trials are held on the merits and which directs that relief be granted freely in the interests of justice, timeliness would be of little concern. Rule 60 motions are post trial motions that, other than in the context of default (discussed below), arise after a trial on the merits, after a substantial investment of time and resources by the parties and the judicial system, and, as here, after a jury verdict and appellate review. ·Rule 60 has a finality component not present in Rule 15. In the ordinary course the court might have denied TIECO's Motion under the increased scrutiny brought to bear on post trial Rule 60 motions.

It is in the interest of finality arriving sooner rather than later that the court treats all of TIECO's allegations as though made in the original Rule 60(b) Motion For New Trial, and that Motion as timely filed.

Second, the nature of the allegations (fraud on the court, malfeasance by the Office of Attorney General), are sufficiently serious that the court resolves the doubts in favor of TIECO.[10]

Common sense would say that the level of scrutiny would go higher, not lower, when the allegations, or at least substantially similar allegations, were made to and rejected by the Court of Appeals in the direct appeal of the case. TIECO strenuously says this did not happen, although it is clear that some of the USS documents produced during and after trial were made a part of the record on appeal. More to the point, it is clear that a core component of TIECO's case, the absence of probable cause, was argued to the 11th Circuit in the direct appeal, *see, e.g.,* [TIECO] *Petition For Rehearing En Banc,* Argument B.

The cases governing Rule 60(b)(3) motions are Janus-like with their opposing approaches and concomitant outcomes. When relief is sought from a default judgment, the cases call for great liberality because of the law's policy that cases be decided on the merits; when relief is sought after trial on the merits, the strong interest of finality carries weight. See, e.g. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil 2d* § 2857 at 253—257 and cases cited therein. "The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b)(3) with a scrupulous regard for the aims of finality." The courts are said to have been unyielding in requiring that a party show good reason for the failure to take appropriate action sooner than the expiration of the stated time limit, here one (1) year. *Id.,* 260, fn. 17 & 18.

The Court of Appeals, should it be asked to revisit this matter, may well say that TIECO made a deliberate and informed choice at trial when, knowing that it did not have all the evidence it was entitled to have regarding USS's actions or interactions with the Attorney General's office, it elected to let the jury deliberate to verdict rather than seek a mistrial and a new trial. In TIECO's defense, the record suggests the trial court would have looked unfavorably on anything that meant another trial. In any event, TIECO was represented by able and experienced trial counsel, and the court is unwilling

---

10. The operative word in this sentence is "nature". The court is not saying that the allega-

tions are true, only that TIECO makes them. *See* fn. 3, *supra.*

to say it would have done things any differently were it in the position TIECO and its counsel found themselves in at that point in the trial. Events were breaking TIECO's way. The jury, after having begun deliberations, was instructed by the trial court to ignore USS's claims against TIECO and deliberate only on TIECO's claims against USS. To give up that advantage, before or after verdict, would have been a much riskier tactic for TIECO than letting the case go to verdict.

Once the verdict was in, TIECO could have filed a Rule 60(b)(3) Motion seeking relief from the judgment, which may or may not have included a new trial.

Once the case was on appeal, TIECO could have filed a Rule 60(b)(3) Motion. The trial court could have denied it, leaving TIECO free to appeal (as USS did the attorney's fees and costs award), or, had the trial court been inclined to grant a Rule 60(b)(3) Motion, it could have sought recall of the case from the 11th Circuit.

In any event, the court does not believe TIECO's Rule 60(b)(3) Motion For New Trial should be denied for any reason other than those arising out of the 11th Circuit's decision in this case. The reason is that the court believes that the 11th Circuit ruled that the accounting/billing scheme described in its opinion supplied sufficient probable cause for USS's actions. In order to deny the TIECO Rule 60(b)(3) Motion For New Trial, this court must, and does, say that in its opinion the documents produced by USS after trial (and made part of the appellate record), or evidence derived therefrom by way of additional documents or deposition testimony, would not change the Court of Appeals' mind on the probable cause point. Such evidence may well portray USS in a more unfavorable light than as depicted in the record reviewed by the Court of Appeals, but the court does not see how any such evidence would negate

that court's probable cause determination arising from the TIECO billing/accounting scheme.

Similarly, the court believes that any evidence that may be subsequently developed by TIECO about what USS knew about the truth of the allegations made to the Attorney General's Office and when it knew it [11], or USS's level of participation in the Attorney General's Office's decision to seek the search warrant for TIECO's premises, or the decision to indict TIECO, or the financial or political interactions between USS and the Attorney General's Office (or any former holder of that office) would not change this probable cause analysis.[12]

Taking as true, as the court does, TIECO's assertions that USS did not lose any money as a result of the billing scheme, assuming as true that USS personnel at the local facilities were involved in the creation and execution of the billing scheme, the fact remains that TIECO sent to USS, using channels of interstate commerce, false invoices, specifically, invoices seeking payment for goods that were not delivered. The fact that different goods of equal value may have been delivered later was, in the 11th Circuit's view, irrelevant. USS purchasing headquarters thought it was buying, and that its local facilities were taking delivery of, goods that in fact were not being purchased or delivered.

The court reads TIECO's motion as originally asserting fraud on the court, then newly discovered evidence, combined with an absence of probable cause. The court views TIECO's probable cause analysis as shifting from probable cause to believe TIECO had committed fraud to probable cause to believe that USS knew, or should have known, that TIECO had supplied value for the monies received from USS, and that USS agents at the local facilities participated in and acquiesced in the TIECO billing scheme. The

---

**11.** The most important of which to TIECO, in the court's view, involved Marty Colby, the former TIECO employee whose statements to his attorney, Victor Hayslip, began the chain reaction resulting in this action and TIECO II. Colby told Hayslip he had stolen some property from TIECO. In later testimony before the Alabama Ethics Commission, USX's lead auditor, who knew of Colby's thefts, did not mention it.

**12.** While legally irrelevant, the Judge that tried this case said at one hearing before he recused himself that "I have no doubt whatever that if I, after the Eleventh Circuit opinion, granted a new trial on 1983 conspiracy, the Eleventh Circuit would— would reverse almost as soon as the notice of appeal was filed". April 25, 2003 Motions Hearing, p. 22, lines 10–13.

court doesn't think this made any difference to the 11th Circuit. The court cannot substitute its judgment for that of the Court of Appeals.

Were the decision on the TIECO Rule 60 Motion For New Trial the court's alone to make, the result would be unchanged. TIECO's argument strikes the court as essentially saying "we may not have dotted all our i's and crossed our t's, but what we did we did as an accommodation to the local USS customer, and what USS corporate did to us when they learned of the local scheme was really bad". That may be, but the test applied by the court is that set forth in the 11th Circuit's opinion, discussing the malicious prosecution claim:

> ... the jury ... could not have reasonably found a constitutional violation. In arguing the Due Process Clause was violated, Appellees point to much of the same evidence they rely on for the state law malicious prosecution claim. [FN15] But TIECO has no right under the substantive component of the Due Process Clause to be free from criminal prosecution without probable clause. *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Whiting v. Traylor,* 85 F.3d 581, 584 nn. 3, 4 (11th Cir.1996).

FN15. While relying on the same evidence, Appellees state in their brief, "There is no assertion of a malicious prosecution claim under 42 U.S.C. § 1983." Appellees' Br. 33. This statement highlights the perplexing nature of Appellees' § 1983 claim. When asked at oral argument to articulate the heart of the constitutional claim, Appellees' counsel was unable to do so.

261 F.3d 1275, 1289. The Court of Appeals went on to discuss probable cause:

> *1291 [26][27][28] Probable cause is "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." *Simpson v. Life Ins. Co. of Ga.,* 614 So.2d 994, 996 (Ala. 1993) (internal quotations omitted); *accord Eidson v. Olin Corp.,* 527 So.2d 1283, 1285 (Ala.1988); *see also Delchamps, Inc. v. Bryant,* 738 So.2d 824, 832 (Ala.1999); *S.S. Kresge* 348 So.2d at 488. In determining whether probable cause existed, the facts should not be viewed in hindsight, but rather at the time the prosecution is insti-

tuted. *See Nat'l Sec. Fire & Cas. Co. v. Bowen,* 447 So.2d 133, 139 (Ala.1983). Where material facts are disputed, the issue of probable cause is for the jury; however, where the material facts are not disputed, the issue is one of law for the court. *See S.S. Kresge,* 348 So.2d at 488. Put another way, if there are undisputed facts in the record establishing that the defendant had probable cause to pursue the criminal indictments, the plaintiff cannot recover for malicious prosecution. *See Eidson,* 527 So.2d at 1285.

■ In this case, undisputed facts establish that, at the time of the grand jury's investigation, USX reasonably suspected TIECO of criminal activity. As mentioned previously, TIECO's description of its accounting system essentially comported with the description given by USX to the grand jury. Mr. Wager, USX's lead auditor, told the grand jury that TIECO billed USX in Pittsburgh for items not delivered to USX's tractor shop or golf course. Similarly, Ms. Hackbarth, TIECO's employee in charge of accounting, testified at trial that TIECO was billing USX in Pittsburgh for one item while delivering a different item to the tractor shop and golf course. In other words, the item being billed was not being delivered. Although TIECO may have had an innocent explanation for this accounting system, the system, on its face, gave USX a reasonable ground for suspecting TIECO of fraud. Furthermore, even though USX may have had reason to question the credibility of TIECO's principal accuser (Mr. Colby), that did not denigrate the probable cause created by TIECO's accounting system. Therefore, the district court should have granted USX judgment as a matter of law on the malicious prosecution counterclaim.

TIECO says in its Supplement To Motion For New Trial that it needs discovery in support of its Motion so that it may endeavor to demonstrate that the evidentiary basis for the 11th Circuit's ruling in this case, "[i]n sum, there is no evidence in the record to support a finding that Appellees' federal constitutional rights were violated. The district court should have granted USX judgment as a matter of law on the § 1983 counterclaim",

261 F.3d at 1290, is because USS and the Attorney General's Office conspired together to violate TIECO's rights. In the court's view, the allegations raised in TIECO's Supplement are simply too weak to justify setting aside the final decision in this case. It is legal for businesses (through PAC's, as USS apparently did here) and individuals to give money to political candidates and to support their campaigns, so evidence of such contributions does not raise even an inference of wrongdoing by the Attorney General's Office, or any holder of that office from 1995 until the present. The suggestion that the Attorney General's Office "championed" the USS cause is speculative argument. TIECO's allegations of USS—AG Sessions and/or AG Pryor are said to have taken place in 1996, 1997 and 1998. The search warrant in question was issued on August 30, 1995, and executed on August 31, 1995. The 11th Circuit explicitly found probable cause for the issuance of the warrant.

TIECO says that USS was in possession of exculpatory evidence [13], which should have been given to the Attorney General's office. This evidence would have been *Brady/Giglio* material that would have been used by TIECO to impeach USS witnesses. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (due process requires the prosecution to disclose evidence favorable to accused upon request whether evidence is material to guilt or punishment); *United States v. Agurs*, 427 U.S. 97, 107—11, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (prosecution duty to disclose governed by materiality standard and not limited to situations where the defendant has requested favorable evidence); *Giglio v. U.S.*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (failure to disclose government promise of immunity to co-defendant where government's case "depended almost entirely" on co-defendant's testimony violated due process and required reversal of conviction). While not trivializing USS's discovery conduct, the court does not read *Brady* as controlling the evidentiary obligations of private actors. And, even if it

did, TIECO would have a difficult time surmounting the numerous procedural defaults that now face a defendant mounting a post-trial *Brady/Agurs/Giglio* challenge. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 292, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (undisclosed documents impeaching eyewitness testimony as to circumstances of abduction of victim were favorable to the defendant for purposes of *Brady* but defendant could not show either materiality under *Brady* or prejudice that would excuse his procedural default).

The court sees TIECO's assertions as essentially *Brady* violation allegations. *Brady* and its progeny are anchored in the constitutional law of criminal due process, and have no applicability to civil pretrial discovery. Compared to civil actions, where discovery all too often takes on a life of its own, criminal discovery is severely limited. Further, because TIECO won dismissal of the state criminal prosecution and dismissal of USS's civil claims raising, *inter alia*, the failure of the State of Alabama to turn over exculpatory material, it is difficult to see any prejudice accruing to TIECO from not obtaining yet more exculpatory evidence regarding Colby, Wager or the involvement between USS and the Attorney General's Office.

Factually speaking, the court, based on its review of the file, is far more inclined to say that the whole imbroglio is more fairly characterized as overreaction by all parties that, once begun, no one knew how to stop. USS's initial suspicions of widespread theft, had USS's claims ever gone to trial, may have turned out to be erroneous, and its turning to the government for criminal investigation may have been an excessive response to a situation that it did not fully have its arms around. These things happen, and are not the stuff of constitutional violations. TIECO's reaction, while understandable, was not appreciably different: it, too, assumed the existence of a conspiracy, in this case to

---

**13.** "During the hearings USX admitted that at no time prior to November 1, 1996, had anyone from USX ever looked for the property the Attorney General charged TIECO with stealing. USX admitted that some of the property charged in the indictments had actually been located at USX." TIECO Supplement To Motion For New Trial, discussing 1996 hearings before state Circuit Judge James Garrett. The court also includes the involvement between USX and the Attorney's General's office as arguable impeachment, and therefore exculpatory, evidence.

take its property and violate its constitutionally protected right(s).

Legally speaking, the court views the TIECO Rule 60 Motion For New Trial as a continuation of the dialogue between it and the 11th Circuit initiated by TIECO in its *Petition For Rehearing En Banc* and answered by the Court in its denial thereof. Put another way, TIECO disagreed with 11th Circuit, and still does, about whether it proved a lack of probable cause in its federal and state claims against USS. With the Court's opinion in hand, TIECO asserts it can, if granted a new trial and discovery, satisfy its evidentiary burden on the absence of probable cause. As already noted, the court believes the 11th Circuit said the billing scheme sufficed for probable cause:

> Furthermore, even though USX may have had reason to question the credibility of TIECO's principal accuser (Mr. Colby), that did not denigrate the probable cause created by TIECO's accounting system.

*United States Steel v. Tieco, Inc., supra,* 261 F.3d at 1291.

In the alternative, the court believes that TIECO's best arguments are the *Brady* arguments discussed above. Those arguments are neither persuasive nor compelling in a civil action at this action's procedural posture.

> … TIECO maintains that at the request of, and as an accommodation to USX agents and employees, it delivered to the Tractor shop equivalent parts and entire Cushman vehicles having a value equal to that of the parts listed on the invoices, as ordered by USX purchasing managers and expediters possessing the requisite purchasing authority.

November 9, 1999 Memorandum Opinion Striking The Claims Of The Plaintiff, doc. 310, p. 2. This court, like the Eleventh Circuit, cannot give credence to this argument. The facts, as set forth by the Court, were that the billing and accounting scheme was designed for the purpose of evading and avoiding USS's purchasing controls in Pittsburgh. The fact that local USS employees helped with the scheme, or even thought it up, is irrelevant. TIECO's participation was voluntary and intentional, and it knew that the scheme violated USS purchasing policy. The local USS employees' knowledge and participation obviously detracted from the jury appeal of USS's claims against TIECO. That's not the same as saying probable cause never existed for the actions taken against TIECO as described in its counterclaim and Rule 60 Motion For New Trial.

## VI. *Summary*

If the court were ruling on the TIECO Motion For New Trial using only the discretion vested in the court under Rule 60 or 60(b)(3), it would reach the same result as, in the court's view, the 11th Circuit's decision in this action requires: it would deny the Motion. It does so knowing that it can be said that USS is, "once again, rewarded for its misconduct". Frankly, neither USS nor TIECO present as particularly worthy of relief. TIECO participated in a billing scheme that was on its face misleading and benefitted economically from that scheme while it lasted. TIECO successfully struck USS's case as a sanction for USS discovery violations. USS, regardless of whether it meant to do so or not, misled the trial court up to and through the trial about the existence and location of relevant documents; in return, USS forfeited the opportunity to have a jury pass on its allegations against TIECO. TIECO may well be right that USS's dilatoriness in producing the documents was due to fear that the production would "hurt the case"; certainly anything supporting TIECO's "value provided" or "acquiescence" theories would have detracted from the jury appeal of USS's claims against TIECO, and make it more likely the jury would disbelieve USS's witnesses. While regrettable, the USS conduct did not make out a constitutional violation. *U.S. Steel v. Tieco, supra.* The court reads the 11th Circuit's ruling as implicitly finding the sanctions imposed by the trial court in 1999 were a satisfactory resolution of the USS conduct.

Finally, the court believes that granting a new trial, no matter how it was characterized, would involve the court in a review of the 11th Circuit's ruling. That is not an appropriate role for any District Court, and this court will not do so.

## VII. *Conclusion*

For the reasons stated, and any other reasons that may have been stated from the bench, the TIECO Rule 60(b)(3) Motion For New Trial is denied.

The Motion to Consolidate is denied as moot, as are the requests for discovery in support of the Rule 60(b)(3) Motion For New Trial.